Case No. 25-50964

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GUSTAVO ALONZO TOBIAS,

Defendant-Appellant

**Consolidated with**

Case No. 25-50968

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

GUSTAVO ALONZO TOBIAS-RIVERA,

Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION
THE HONORABLE DAVID COUNTS PRESIDING

---

**Appellant's Principal Brief on the Merits**

---

Robert R. Bell
The Law Office of Robert R. Bell
P.O. Box 1089
Hewitt, Texas 76643
Telephone: (806) 679-9136
rbellfedappeals@gmail.com

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of the case. These representations are made so that this Court's judges may evaluate possible disqualification or recusal.

**District Judge:**

- David Counts
  200 E. Wall St.
  Midland, TX 79701

- Alan D. Albright
  800 Franklin Ave, Rm. 301
  Waco, TX 76701

**Magistrate Judge:**

- Jeffrey C. Manske -- Retired

- Derek T. Gilliland
  899 Franklin Ave.
  Waco, TX 76701

**Appellant:**

- Gustavo Alonzo Tobias, Appellant
  USM #: 87623-510
  FCI Beaumont Low
  Federal Correctional Institution
  P.O. Box 26020
  Beaumont, TX 77720

- Barry Joseph Gormley, Trial Counsel
  POB 2938
  415 E. FM2410
  Harker Heights , Texas 76548
  Telephone: (254) 768-8043

- Charles Wayne King, Trial Counsel
  36 E. Twohig Ave., Ste. 330
  San Angelo, TX 769031
  Telephone: (512) (325) 227-6536

- Doyle L. Young, Trial Counsel
  POB 2174
  Waco, TX 76703
  Telephone: (512) (254) 855-1108

- Kyra Rose Leal
  100 E. Central Expressway
  Killeen, TX 76541
  Telephone: (512) (254) 526-5688

- Robert R. Bell, Appellate Counsel
  The Law Office of Robert R. Bell
  P.O. Box 1089
  Hewitt, Texas 76643
  Telephone: (806) 679-9136

**Appellee:**

- Kristy Karen Callahan, Trial Counsel
  U.S. Attorney's Office
  601 NW Loop 410, Ste. 600
  San Antonio, TX 78216
  Telephone: (210) 384-7255

- Mark Tindall, Trial Counsel
  U.S. Attorney's Office
  903 San Jacinto Blvd., Ste. 334
  Austin, TX 78701
  Telephone: (512) 916-5858

- Stephanie Smith-Burris, Trial Counsel
  U.S. Attorney's Office
  800 Franklin, Ste. 280
  Waco, TX 76701
  Telephone: (254) 750-1580

- Zachary C. Richter, Appellate Counsel
  U.S. Attorney's Office
  903 San Jacinto Blvd, Ste. 334
  Austin, Texas 78701
  Telephone: (512) 916-5858

/s/ Robert R. Bell
Robert R. Bell
Appointed Counsel for Appellant,
Gustavo Alonzo Tobias

## Recommendation on Oral Argument

Counsel believes that oral argument will assist the Court in deciding this appeal. Accordingly, oral argument is requested.

# TABLE OF CONTENTS

**Page**


Certificate of Interested Persons .......... i

Recommendation on Oral Argument .......... iv

Index of Authorities .......... vii

Statement of Jurisdiction .......... 1

Statement of the Issues .......... 2

Statement of the Case .......... 3

The Charges and Pleas .......... 3

The Sentences .......... 3

The Appeal .......... 5

Summary of Argument .......... 5

Argument and Authorities .......... 7

Issue No. 1: Did the district court plainly err when it relied upon the 2024 Guidelines in sentencing Tobias? .......... 7

A. Standard of Review .......... 7

B. The district court failure to use the correct Guidelines when it sentenced Tobias constitutes plain error .......... 7

C. The district court's error affected Tobias's substantial rights .......... 9

D. Permitting the plain error to stand would seriously affect the fairness, integrity or public reputation of the judicial proceedings .......... 12

E. Harmful error is present .......... 12

Issue No. 2: Did the district court clearly err when it failed to give Tobias a two-point reduction in his Offense Level for being a minor participant in the offense? .......... 13

A. Standard of Review .......... 13

B. The district court committed clear error when it failed to give Tobias a minor role reduction .......... 13

1. Guidelines commentary provides a list of factors a court should consider in deciding whether a defendant is entitled to a minor role reduction ........ 14
2. Tobias is substantially less culpable than the average participant ........ 15
3. Clear error is present ........ 19

C. Harmful error is present ........ 20

Conclusion ........ 20
Certificate of Service ........ 22
Certificate of Compliance ........ 23
ECF Certifications ........ 24

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Molina-Martinez v. United States*,
578 U.S. ___, 136 S. Ct. 1338, 194 L.Ed.2d 444 (2016) ....................11

*Puckett v. United States*,
556 U.S. 129 (2009)....................7

*United States v. Badger*,
925 F.2d 101 (5th Cir. 1991) ....................13

*United States v. Bishop*,
603 F.3d 279,281 (5th Cir. 2010) ....................9

*United States v. Bree*,
927 F.3d 856 (5th Cir. 2019) ....................8

*United States v. Castro*,
843 F.3d 608 (5th Cir. 2016) ....................14

*United States v. Earnest*,
132 F.4th 905 (5th Cir. 2025)....................18

*United States v. Myers*,
150 F.3d 459 (5th Cir. 1998) ....................7

*United States v. Quintanilla-Matamoros*,
164 F.4th 366 (5th Cir. 2026)....................12

*United States v. Rodriguez-Pena*,
957 F.3d 514 (5th Cir. 2020) ....................12

*United States v. Ronquillo*,
508 F.3d 744 (5th Cir. 2007) ....................7

*United States v. Sanchez-Villareal*,
857 F.3d 714 (5th Cir. 2017) ....................19

*United States v. Trujillo*,
502 F.3d 353 (5th Cir. 2007) ....................13

## Statutes

8 U.S.C. §§'s 1326(a) ....................3

8 U.S.C. § 1326(b)(2)....................3,5

18 U.S.C. § 1291 ....................1

18 U.S.C. § 3231 ....................1

18 U.S.C. § 3553(a)(4)(A)(ii) ....................8, 9

18 U.S.C. § 3742 ....................1

21 U.S.C. § 841(a)(1)....................3

21 U.S.C. § 841(b)(1)(A)(ii)(II)....................3

21 U.S.C. § 841(b)(1)(B) ....................5

21 U.S.C. § 841(b)(1)(B)(ii)(II)....................3

21 U.S.C. § 846 ....................3

## Rules

Federal Rule of Criminal Procedure 32 ....................7

## Other Authorities

SENT'G COMM'N GUIDELINES MANUAL, Cover Page (November 1, 2025) ....................8

U.S.S.G., App'x C, Amend. 833....................9

U.S.S.G. Ch. 5, Pt. A....................4

U.S.S.G. § 1B1.11(a) ....................7, 9

U.S.S.G. § 1B1.11(b)(1) ....................7, 9

U.S.S.G. § 2D1.1....................9

U.S.S.G. § 2D1.1(e)(2) ....................9, 11

U.S.S.G. § 2D1.1(e)(2)(B) .......... 9

U.S.S.G. § 2D1.1(e)(2)(B)(ii) .......... 10

U.S.S.G. § 3B1.2 .......... 6, 9, 14, 19

U.S.S.G. § 3B1.2(b) .......... 14

U.S.S.G. § 3B1.2, cmt. (C) .......... 15

**No. 25-50964**

**Consolidated with 25-50968**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GUSTAVO ALONZO TOBIAS,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION
THE HONORABLE DAVID COUNTS PRESIDING

---

Appellant's Principal Brief

---

## Statement of Jurisdiction

The jurisdiction of this Court is invoked under 18 U.S.C. § 1291 as this is an appeal from a final judgment entered by the United States District Court for the Western District of Texas. Jurisdiction is also had under 18 U.S.C. § 3742, as an appeal of a sentence under the Sentencing Reform Act of 1984. The district court had jurisdiction over the case pursuant to 18 U.S.C. § 3231.

This consolidated appeal involves two district court judgments entered by the Western District of Texas against Gustavo Alonzo Tobias-Rivera ("Tobias"). In the first appeal, Case No. 25-50964 (the "drug trafficking case"), the district court entered written judgment against Tobias on November 24, 2025. ROA.25-50964.197. Tobias had filed a notice of appeal prior to this date, on November 19, 2025. ROA.25-50964.191. In the second appeal, Case. No. 25-50968 (the "illegal reentry case"), the district court entered written judgment against Tobias also on November 24, 2025. ROA.25-50968.111 Tobias's notice of appeal here was filed on November 21, 2025. ROA.25-50968.105.

For purposes of appeal, this Court consolidated these two cases on March 26, 2026. Case No. 25-50964 is the lead case.

## Statement of the Issues

**Issue No. 1: Did the district court plainly err when it relied upon the 2024 Guidelines in sentencing Tobias?**

**Issue No. 2: Did the district court clearly err when it failed to give Tobias a two-point reduction in his Offense Level for being a minor participant in the offense?**

# Statement of the Case

## The Charges and Pleas

In the Drug Trafficking Case (6:23-cr-00234-41), Tobias was charged along with 47 other defendants for conspiracy to commit drug trafficking offenses. Specifically, Tobias was charged with violating of 21 U.S.C. §§ 846 and 841(a)(1), 841(b)(1)(A)(ii)(II) and 841(b)(1)(B)(ii)(II). ROA.25-50964.23-27. Subsequently, Tobias pled guilty to Count 2 of the Indictment for violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II). There is no forfeiture or restitution in his case. ROA.25-50964.197-202; ROA.25-50964.252.

In the Illegal Reentry Case (6:23-cr-00274-1), Tobias was charged in a one count Indictment for illegal reentry after deportation in violation of 8 U.S.C. §§'s 1326(a) and (b)(2). ROA.25-50968.11. He likewise pled guilty to this charge. ROA.25-50968.166. No forfeiture or restitution was assessed in this case either. ROA.25-50968.111-16.

## The Sentences

One Presentence Report ("PSR") was prepared that included both the drug trafficking case and the illegal reentry case. ECF No. 1800 at 1 in the drug trafficking case. The PSR relied upon the 2024 Guidelines Manual, even though Tobias's joint sentencing hearing for both cases occurred on November 18, 2025. *Id.* at ¶ 68; ROA.25-50964.286; ROA.25-50968.191. In the drug trafficking case, the PSR

calculated Tobias's Base Offense Level at 26. No points were added and thus his Adjusted Offense Level was also at 26. ECF No. 1800 at 16. In the illegal reentry case, Tobias's Base Offense Level was at 8 and ten points were added pursuant to Guideline section 2L1.2(b)(2)(A) because of a prior drug trafficking conviction. ECF No. 1800 at 16. A multiple count adjustment was then made according to Guideline section 3D1.4, which resulted in a Combined Adjusted Offense Level of 27. ECF No. 1800 at 17. A three-point reduction was then subtracted, resulting in a Total Offense Level of 24.

Tobias's criminal history score was calculated at three, giving him a Criminal History Category of II. ECF No. 1800 at 21. This resulted in a Guideline imprisonment range of 57 to 71 months. U.S.S.G. Ch. 5, Pt. A. Because, however, the statutory minimum on the drug trafficking offense is five years, the Guideline range was adjusted to 60-71 months. ECF No. 1800 at 25.

Originally, no objections were made to the PSR. However, at the sentencing hearing,[1] after new counsel was appointed, Tobias objected to the PSR's failure to give him a minor role reduction. ROA.25-50964.288, ROA.25-50964.296. The objection was overruled and the district court adopted the PSR's calculations. ROA.25-50964.297-98. At no point did the district court discuss whether the 2025 Guidelines Manual should be the one used and no objections were made concerning

[1] The sentencing hearings for the two cases were combined into one hearing. ROA.25-50964.287.

this point. The district court sentenced Tobias to a prison term of 71 months for both offenses, to run concurrently with one another. ROA.25-50964.307, ROA.25-50964.198, ROA.25-50968.112.[2]

If Tobias had received a minor role adjustment, his Adjusted Offense Level for the drug trafficking offense would have been 24 and his Combined Adjusted Offense Level would have been 25. This would have resulted in a Total Offense Level of 22 and a Guideline range of 46-57 months. Since the statutory minimum is 5 years, Tobias would have received a 60-month sentence, instead of a sentence of 71 months.

**The Appeal**

Tobias timely filed notices of appeal in both cases. ROA.25-50964.191, ROA.25-50968.105. As noted, this Court consolidated the two appeals on March 26, 2026. ECF No. 36, 25-50964.

## Summary of Argument

The district court plainly erred when it used the 2024 Guidelines in sentencing Tobias. Tobias was sentenced on November 18, 2025 and thus the district court should have used the November 1, 2025 Guidelines. The 2025 Guidelines include new special instructions addressing district courts' failures to adequately apply the

[2] The statutory maximum in the drug trafficking case is 40 years and in the illegal reentry case 20 years. 21 U.S.C. § 841(b)(1)(B), 8 U.S.C. § 1326(b)(2).

mitigating role adjustment. These instructions state that an adjustment under section 3B1.2 is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function. Further, the adjustment should be analyzed without regard to whether the defendant was substantially less culpable than the average participant. If the district court had used the 2025 Manual and followed the new instructions it would have given Tobias a minor role reduction. Its failure to do so was error and resulted in Tobias receiving a longer sentence.

Similarly, the district court clearly erred by not finding that Tobias was substantially less culpable than the average participant. The other participants in the conspiracy sold more drugs than did Tobias, were involved in the conspiracy for a longer period of time, provided additional illegal acts in furtherance of the conspiracy (collected money, ran guns, operated stash houses); possessed firearms at the time of their arrest, were involved in the sale of firearms to other co-conspirators and/or were found with significant amounts of cash on them. Tobias, on the other hand, participated in the conspiracy for a few brief days and was involved in just one sale. He was not a leader or organizer, had no decision making authority and whatever benefit he received was insubstantial. If the district court had analyzed the factors set forth in the Guidelines Commentary it would have concluded he was entitled to a minor role reduction. Its failure to do so was error and resulted in a longer sentence.

## Argument and Authorities

**Issue No. 1: Did the district court plainly err when it relied upon the 2024 Guidelines in sentencing Tobias?**

### A. Standard of Review

A district court's compliance with the sentencing procedures of Federal Rule of Criminal Procedure 32 is reviewed de novo. *See, e.g., United States v. Myers*, 150 F.3d 459, 465 (5th Cir. 1998). If a defendant fails to object in the district court, this Court reviews the sentence only for plain error. *See, e.g., United States v. Ronquillo*, 508 F.3d 744, 748 (5th Cir. 2007). For reversible plain error, a defendant must show a clear or obvious error that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he does so, this Court has the discretion to correct the error, but will generally do so only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*. As shown above, no objections were made to the district court's decision to rely upon the 2024 Guidelines. Thus, this Court reviews the district court's decision for plain error.

### B. The district court failure to use the correct Guidelines when it sentenced Tobias constitutes plain error.

The Guidelines state that the district court is to use the Manual in effect on the date the defendant is sentenced unless doing so would violate the ex posto facto clause of the Constitution, at which point the court should use the Manual in effect on the date the offense of conviction was committed. U.S.S.G. § 1B1.11(a) and

(b)(1). Ex posto facto issues are not present here. Likewise, section 3553(a) mandates that the district court is to use the Guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4)(A)(ii).

Tobias was sentenced on November 18, 2025. ROA.25-50964.286. The Guidelines were amended in 2025 with an effective date of November 1, 2025. U.S. SENT'G COMM'N GUIDELINES MANUAL, Cover Page (November 1, 2025). Accordingly, the district court was required to use the 2025 Guidelines when it sentenced Tobias.

It did not. The PSR plainly states that it used the 2024 Guidelines Manual to determine Tobias's offense level. ECF No. 1800 at ¶ 68. Moreover, at sentencing the district court adopted the PSR's recommendations and calculations. ROA.25-50964.297-98. It is thus evident the district court relied upon the 2024 Guidelines when it sentenced Tobias. This was plain error.

Four elements must be satisfied to succeed on a plain error review: (1) the district court erred; (2) the error was plain; (3) the plain error affects Tobias's substantial rights; and (4) permitting the plain error to stand would "seriously affect the fairness, integrity or public reputation of the judicial proceedings." *United States v. Bree,* 927 F.3d 856, 859 (5th Cir. 2019). There can be no doubt the district court erred by using the wrong Manual. Moreover, the error is plain. This Court determines whether error is plain by considering the existing law at the time of the

appeal. *United States v. Bishop*, 603 F.3d 279,281 (5th Cir. 2010). As shown, both the Guidelines and the statute mandate courts use the Manual in effect at the time of sentencing. U.S.S.G. § 1B1.11(a) and (b)(1); 18 U.S.C. § 3553(a)(4)(A)(ii). This was true at the time of Tobias's sentencing as it is true today.

**C. The district court's error affected Tobias's substantial rights.**

Section 3B1.2 of the Guidelines provides for a reduction in offense level based on a defendant's mitigating role in the offense, with a four-level decrease for minimal participants and a two-level decrease for minor participants. U.S.S.G. § 3B1.2. The Commission does not believe that district courts have adequately applied the mitigating role adjustment. Hence, it amended the Guidelines in 2015 to increase it usage. Data reveals, however, that the previous amendment did not cause "a sustained increase in application of the mitigating role adjustment in § 2D1.1 cases." U.S.S.G., App'x C, Amend. 833. As a result the 2025 Guidelines includes new special instructions addressing district courts' failures to adequately apply the mitigating role adjustment. *See id.* These instructions are found in section 2D1.1(e)(2).

This section states, among other things, that an adjustment under section 3B1.2 is "generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function." U.S.S.G. § 2D1.1(e)(2)(B). Moreover,

the adjustment should be analyzed without regard to whether the defendant was substantially less culpable than the average participant. *Id.* at § 2D1.1(e)(2)(B)(ii).

Because the district court did not rely upon the 2025 Guidelines it failed to consider whether Tobias was merely performing a low-level function regardless of whether he was substantially less culpable than other average participants. This failure affected his substantial rights. Indeed, the record shows that forty-eight people were arrested in connection with this drug trafficking conspiracy. ECF 1800 at 6-13. The investigation began in October 2022 and originally focused on Gumaro Chavez who was a major supplier of cocaine and methamphetamine in the Waco, area. Chavez's source of supply for cocaine was Alberto Murguia. *Id.* at ¶¶ 56-57. Murguia apparently sold cocaine to Tobias on July 8, 2023. *Id.* at ¶¶ 61-62.

The conspiracy began by at least October 2022 and continued through November 2023. ROA.25-50964.27. At least 193.63 kilograms of methamphetamine were involved along with 254.56 kilograms of cocaine. Additionally, 20 firearms were confiscated with $73,098.00 in cash. *Id.* at ¶ 60. None of the firearms or cash were attributed to Tobias. With all the wiretaps and Government investigation, all we know about Tobias is that Murguia delivered cocaine to him on one day out of the 400 or so odd days the conspiracy lasted. *Id.* at ¶ 62. The 3 kilograms constitutes less than 1% of the total drugs recovered with this conspiracy.

Based on these uncontroverted facts, it seems reasonable to conclude that Tobias was in fact performing a low level drug trafficking function. Further, considering these facts, together with the special instructions included in the 2025 Guidelines Manual found at section 2D1.1(e)(2), it seems likely the district court would have sustained Tobias's objection to the failure to give him a minor role reduction. At the very least, the district court was required to consider this possibility pursuant to the 2025 Guidelines. It failed to do so and this failure, as noted, was plain error.

Moreover, the failure to rely on the 2025 Guidelines and analyze the special instructions found therein regarding the mitigating role adjustment certainly affected Tobias's substantial rights. With the minor role reduction, Tobias's Total Offense Level would have been 22 and his Guideline range 46-57 months. Because the statutory minimum is 5 years. Tobias would have received a 60-month sentence, instead of a sentence of 71 months. Furthermore, The Supreme Court has also held that if "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez v. United States*, 578 U.S. ___, 136 S. Ct. 1338, 1347, 194 L.Ed.2d 444 (2016). There is no rational reason to distinguish this holding from the situation

when the record is silent as to what the district court might have done at Tobias's sentence if it had considered the correct Guidelines Manual.

### D. Permitting the plain error to stand would seriously affect the fairness, integrity or public reputation of the judicial proceedings.

This Court has noted that typically a "plain Guidelines error that affects substantial rights" also satisfies the fourth prong of plain error review. *United States v. Rodriguez-Pena,* 957 F.3d 514, 515 (5th Cir. 2020) (citing *Rosales-Mireles v. United States*, 585 U.S. 129, 138 S. Ct. 1897, 1908, 201 L.Ed.2d 376 (2018)). Indeed, this Court recently concluded that when there is a clear Guidelines error that is "reasonably likely to have resulted in a longer prison sentence than necessary and there are no countervailing factors" suggesting that "the fairness, integrity, and public reputation of the proceedings will be preserved absent correction," then the error should be corrected. *United States v. Quintanilla-Matamoros,* 164 F.4th 366, 373 (5th Cir. 2026) (quoting *Rosales-Mireles*, 585 U.S. at 142–43. The same is true here.

### E. Harmful error is present.

As noted, the same PSR was used in both cases before the district court and it used a multiple count adjustment to determine Tobias's Combined Adjusted Offense Level. ECF No. 1800 at ¶ 84. Hence, an error in calculating the Adjusted Offense Level in the drug trafficking case would result in an error in the Combined Adjusted Offense Level, which correspondingly affects the correct Guideline range in both

cases. That is what happened here. If the 2025 Guidelines were used, Tobias would have received a minor role reduction and his Adjusted Offense Level would have been 24. Accordingly, his combined Adjusted Offense Level would have been 25 and his Total Offense Level would have been 22. As shown, this means his Guideline range would have been 60 months for each offense. Tobias, however, was assessed a concurrent 71-month sentence for each offense. Harmful error is clear.

**Issue No. 2: Did the district court clearly err when it failed to give Tobias a two-point reduction in his Offense Level for being a minor participant in the offense?**

**A. Standard of Review**

This Court "review[s] the district court's interpretation or application of the Sentencing Guidelines de novo and its factual findings for clear error." *United States v. Trujillo*, 502 F.3d 353, 356 (5th Cir. 2007) (footnote and italics omitted). Because a district court's conclusion that a defendant did not play a mitigating role is a factual finding, it is subject to the clearly erroneous standard of review. *United States v. Badger,* 925 F.2d 101, 104 (5th Cir. 1991).

**B. The district court committed clear error when it failed to give Tobias a minor role reduction.**

Even if the district court did not commit plain error when it failed to use the 2025 Guidelines, the district court nevertheless committed clear error when it failed

to give Tobias a two-level reduction for being a minor participant under the 2024 Guidelines.[3]

*1. Guidelines commentary provides a list of factors a court should consider in deciding whether a defendant is entitled to a minor role reduction.*

Section 3B1.2 of the Guidelines states that a defendant is to receive a two-level reduction if he was a minor participant in the criminal activity. U.S.S.G. § 3B1.2(b). A defendant is entitled to a minor role adjustment if he can show by a preponderance of the evidence "(1) the culpability of the average participant in the criminal activity; and (2) that [he] was substantially less culpable than that participant." *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016).

The Commentary to the Guidelines notes that the decision to apply a mitigating role adjustment is based on the totality of the circumstances and instructs that the following "non-exhaustive" factors should be considered:

> "(i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant

---

[3] The Guidelines effective as of November 1, 2025 did not change section 3B1.2.

> performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity."

U.S.S.G. § 3B1.2, cmt. (C).

2. *Tobias is substantially less culpable than the average participant.*

Applying these factors it is clear that Tobias is substantially less culpable than the average participant. Tobias is but one of forty-eight participants in this conspiracy. ROA.25-50964.25-26; ECF No. 1800 at 6-13. According to the Indictment, the conspiracy commenced in October 2022 and continued through November 2023. ROA.25-50964.24. It involved approximately 448 kilograms of illegal drugs (both cocaine and methamphetamine) and at least 20 firearms. ECF No. 1800 at ¶ 60. To aid in its investigation, the Government obtained eleven court-authorized wiretaps of the phones of certain members of this conspiracy.

Nevertheless, even with the length and breadth of the investigation and the amount of drugs, firearms and money involved, all we know about Tobias is that for a few brief days in June/July 2023 he agreed to sell 3 kilograms of cocaine for which he hoped to net $2,000 (buying for $17,000 and selling for $19,000). ECF No. 1800 at ¶ 62.

Moreover, we learn from the Factual Resume that other participants in the conspiracy were substantially more culpable than Tobias. The initial target of the

investigation was Gumaro Chavez, a major source of supply for cocaine and methamphetamine in the Waco area. ROA.25-50964.131. Murguia was Chavez's cocaine supplier and at times his methamphetamine supplier. ECF No. 1800 at ¶ 57; ROA.25-50964.131. Other players included Tissa Bass who had her own network of distributors and who was Chavez's largest customer; Karla Espitia who supplied Murguia with methamphetamine and Rogelio Martinez who was a source of supply for Espitia and Murguia. ROA.25-50964.131-33.

In other words, Espitia and Martinez supplied drugs to Murguia who then supplied the drugs to Chavez who sold them to Bass who sold multiple kilograms per week. ROA.25-50964.133. Additional participants included (1) Deleon and Saldana who sold 17 kilograms to Figueroa (Deleon also had suppliers in Dallas and Houston); (2) Sarah Hurst who was Bass's best customer and ordered 9 ounces of methamphetamine at a time; (3) J. Zamora who worked as a money collector and is responsible for 7 kilograms of methamphetamine; (4) Adam Rodriguez and Austin Price who sold drugs and supplied guns to the conspirators; (5) Randy Roberts who delivered 8 kilograms of methamphetamine from a Houston supplier to Waco for Chavez and also obtained hydrocodone pills for Chavez; (6) Jorge Chavez who handled all of Chavez's drug dealing activities after Chavez was arrested; (7) Keith Marquez who was involved with Chavez for up to a year, bought one kilogram at a time from him, and who at the time of his arrest illegally possessed a Glock handgun;

(8) Evencia Villa, Chavez's paramour who knew Chavez's entire operation and was involved in obtaining at least 8 kilograms of methamphetamine; (9) Adam Guajardo, Jr. who purchased from Chavez 9 ounces of cocaine every month and a half; (10) Joshua Gully who sold both methamphetamine and cocaine (2.5 kilograms) and illegally possessed a firearm; (11) Fredrico Olvera who had a stash house in Robinson, Texas with 3.5 kilograms of methamphetamine and was arrested with $20,502 in cash in his possession; (12) Jose Ivan Chavez who ran a stash house for Chavez that included both cocaine and methamphetamine (13) Adrian Gaona who was arrested together with Murguia with 8 kilograms of methamphetamine and $32,104; (14) John Paul Figueroa who was arrested with 17 kilograms of cocaine and $20,492; (15) Ernesto Treto who was responsible for 13 kilograms of cocaine; (15) Edward Cortez, Jr. who is responsible for 22 kilograms of cocaine and was arrested with approximately $12,000 and an illegal firearm; and (16) Emmanuel Rueda who assisted Deleon in firearms and silencers and who is responsible for 3 kilograms of methamphetamine. ROA.25-50964.131-50; ECF No. 1800 at ¶¶ 56-59.

The list could go on but the point is made. Most of the other participants in the conspiracy either sold more drugs than did Tobias, were involved in the conspiracy for a longer period of time, provided additional illegal acts in furtherance of the conspiracy (collected money, ran guns, operated stash houses); possessed firearms at the time of their arrest, were involved in the sale of firearms to other co-

conspirators, and/or were found with significant amounts of cash on them. Then there is Tobias who in a 26-page Factual Resume has four lines devoted to him because one time he sold cocaine for Murguia. ROA.25-50964.142. The evidence clearly evinces he is substantially less culpable than the average participant in this conspiracy.

Of course, doing less than other participants is not sufficient in and of itself. Instead, Tobias must have done enough less so that at best he was peripheral to the advancement of the illegal activity. *United States v. Earnest,* 132 F.4th 905, 917 (5th Cir. 2025) (quoting *United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1992)). It is evident from the Factual Resume, which appears to have been prepared for most if not all 48 defendants, that even without Tobias's involvement in making one delivery of drugs on one day that the advancement of the conspiracy would have been substantially accomplished. It is worth noting again that out of the 448 kilograms of drugs sold less than 1 percent involved Tobias and he had no involvement in the weapons or cash that was confiscated.

Furthermore, nothing in the record suggests Tobias understood the scope and structure of the conspiracy; nothing shows he planned or organized the criminal acts besides his involvement in one sale; nothing reveals he exercised decision making authority or influenced such authority; nothing indicates he had any discretion in performing the illegal acts; and his benefit at most was a mere $2,000. In other

words, he was peripheral to the conspiracy and as such substantially less culpable than the average participant, thereby entitling him to a minor role reduction.

*3. Clear error is present.*

At sentencing, counsel objected to the PSR's failure to provide Tobias with a minor role reduction. Counsel noted, as has been argued here, that Tobias's involvement with this large and ongoing conspiracy was short-lived, involved the one deal, and that he was not an organizer or leader of the conspiracy. ROA.25-50964.296. This objection was overruled, apparently based solely on the amount of drugs involved. ROA.25-50964.297. Since it is error to solely consider the critical or essential nature of the defendant's role when analyzing section 3B1.2, it certainly is also error to consider solely the amount of drugs when making this analysis. *See United States v. Sanchez-Villareal,* 857 F.3d 714, 722 (5th Cir. 2017).

In other words, the district court erred because it reached its decision overruling Tobias's objection solely on drug quantity in the one time sale. It made no findings concerning the average participant in the conspiracy to assess whether Tobias was substantially less culpable than the average participant. *Id.* And it made no analysis of the Guideline factors courts are instructed to consider as stated in the Commentary to section 3B1.2. Moreover, as shown above, the district court even relied upon the wrong version of the Guidelines. It is certainly reasonable to assume that if lower court had performed the analysis described herein and applied the

factors set out in the Guidelines commentary it would have concluded that Tobias was entitled to a minor role reduction. Instead, it relied on drug quantity alone.

### C. Harmful error is present.

As stated, the same PSR was used in both cases before the district court. It used a multiple count adjustment to determine Tobias's Combined Adjusted Offense Level for both offenses. ECF No. 1800 at ¶ 84. Hence, an error in calculating the Adjusted Offense Level in the drug trafficking case would result in an error in the Combined Adjusted Offense Level, which obviously affects both cases. Indeed, if the factors set forth in the Guidelines were properly applied, Tobias would have received a minor role reduction and his Adjusted Offense Level would have been 24. Accordingly, his Combined Adjusted Offense Level would have been 25 and his total Offense Level would have been 22. Based on the statutory minimum for the drug trafficking offense, Tobias's Guideline range would have been 60 months for each offense instead of the 71-month sentence he received for each offense. Harmful error is thus present.

## Conclusion

Based on the changes to the 2025 Guidelines, it is evident that the Committee does not believe courts are adequately applying the minor role reduction to defendants. Tobias's case illustrates this concern. His primary function was a low level trafficking function and he is clearly less culpable than the average participant.

Yet, the district court denied him a minor role reduction. Accordingly, the judgments of the district court should be vacated and the cases remanded for sentencing pursuant to this Court's instructions.

Dated: April 26, 2026

Respectfully submitted,

By: /s/ Robert R. Bell

Robert R. Bell
State Bar No. 00787062
The Law Office of Robert R. Bell
P.O. Box 1089
Hewitt, Texas 76643
Telephone: (806) 679-9136
rbellfedappeals@gmail.com

Appointed Counsel

## **Certificate of Service**

I hereby certify that on April 26, 2026, I electronically filed the foregoing document with the clerk of court for the Fifth Circuit Court of Appeals, using the electronic case filing system of the court. The electronic case filing system sent a Notice of Electronic Filing to Appellate Counsel Zachary C. Richter, the attorney of record in this case, who has consented in writing to accept this Notice as service of this document by electronic means. A copy was also served by first class mail to the party listed below:

Gustavo Alonzo Tobias
USM #: 87623-510
FCI Beaumont Low
Federal Correctional Institution
P.O. Box 26020
Beaumont, TX 77720

/s/ Robert R. Bell
Robert R. Bell

## Certificate of Compliance

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

√ this brief contains 4,518 words, excluding the parts of the brief exempted by FED.R.APP.P. 32(f), or

___ this brief uses a monospaced typeface and contains less than 1,300 lines of text, excluding the parts of the brief exempted by FED.R.APP.P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of rule 32(a)(6) because:

√ this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 pt. font, or

___ this brief has been prepared in a monospaced typeface using Microsoft Word 2010 with __ characters per inch in Times New Roman font.

/s/ Robert R. Bell
Robert R. Bell
Attorney for the Appellant
Dated: April 26, 2026

## ECF Certifications

This brief complies with ECF pleading requirements because we have made the required privacy redactions, the electronic submission is an exact copy of the paper document, and the electronic filing is free of viruses.

/s/ Robert R. Bell
Robert R. Bell
Attorney for the Appellant
Dated: April 26, 2026